IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

IFTIKHAR AHMED MEMON,

    Plaintiff,

v.

UNIVERSITY OF WISCONSIN EXTENSION,

    Defendant.

OPINION & ORDER

17-cv-189-jdp

---

Plaintiff Iftikhar Ahmed Memon brings this case alleging that defendant University of Wisconsin Extension (UWEX) discriminated against him on the basis of his race, national origin, religion, sex, and age when it chose not to hire him as a youth development educator.

Each side has filed a summary judgment motion. Dkt. 13 & Dkt. 16. After considering the parties' briefs and supporting evidence, I will grant UWEX's motion for summary judgment, because Memon fails to present evidence from which a reasonable jury could find that UWEX officials were lying when they explained that they made their decisions based on their stated job qualifications rather than the applicants' race, sex, national origin, religion, or age.

PRELIMINARY MATTERS

In his summary judgment materials, Memon states that UWEX did not provide him complete copies of the job application materials for the applicants who received interviews, and it did not give him any application materials from the applicants who were rejected before the interview stage. But he did not file a formal motion to compel discovery, and even if he had done so this late in the proceedings, I would have denied it. The court warned Memon that

discovery disputes would need to be timely raised. *See* Dkt. 9, at 7–8 ("If the parties do not bring discovery problems to the court's attention quickly, then they cannot complain that they ran out of time to get information that they needed for summary judgment or for trial."). And Memon has accumulated significant experience in litigating this type of case: this is the fourth recent employment-discrimination case brought by Memon that has been resolved at summary judgment. If he thought that UWEX was stonewalling his discovery requests, he should have filed a motion to compel when he received those incomplete documents. I will consider the parties' motions for summary judgment using the materials they have already submitted.

UWEX has filed a motion to stay the pretrial-submission deadlines. Dkt. 34. But because I am dismissing the case at summary judgment, I will deny this motion as moot.

UNDISPUTED FACTS

The following facts are drawn from the parties' summary judgment materials and are undisputed unless noted otherwise.[1]

Plaintiff Iftikhar Ahmed Memon is a resident of Black River Falls, Wisconsin. Memon is a man of Pakistani descent, practices Islam, and was born in 1968. He identifies as Asian. In September 2015, Memon applied for the position of Rusk County 4-H youth development educator for the University of Wisconsin-Extension. The 4-H program is run through UWEX's

---

[1] Many of Memon's proposed findings of fact are not properly supported by evidence. In particular, Memon presents many findings that are within his firsthand knowledge, but he does not submit a declaration or affidavit in which he states that his version of facts is true under penalty of perjury. He also fails to authenticate documents. But in recognition of Memon's pro se status, I will consider his proposed findings notwithstanding these technical defects.

Cooperative Extension, a program providing training "for the betterment of people and for changing their behavior (i.e. knowledge, skill and attitude), as opposed to academic or degree programming." Dkt. 30, at 2, ¶ 3.

The program has about 11,000 adult volunteers serve as mentors and role models for youth. Youth development educators are UWEX employees whose services are contracted to a county; the educators primarily meet with counties and community partners and direct the activities of the volunteers, who in turn administer the educational programming. Every county has its own educational priorities and initiatives. UWEX says that the educator's job is to understand a county's educational priorities and deliver programming matching those priorities. Examples of Rusk County programming include "Family Living, Nutrition Education, Recycling, Junior Fair, and the Trails End Camp." *Id.* at 3, ¶ 8.

The position description for the Rusk County job was created after a "visioning session," where Julie Keown-Bomar, then a regional director and hiring and budget authority for UWEX, met with UWEX oversight committee members and community partners to get input on the types of educational programming they desired. The position description listed five "minimum qualifications":

- Masters or other graduate degree with course work in educational principles, curriculum development, program evaluation and/or the cognitive and social development of youth and adults

- Demonstrated skills in planning, implementing or teaching educational programs

- Experience in youth related programs

- Experience (paid or volunteer) in working at a community level and partnering with others to address educational needs

- Knowledge and skills to effectively interact with people from different cultural backgrounds including those associated with race, ethnicity, national origin,

> religion, socioeconomic status, age, gender, disability, sexual orientation, and other aspects of human diversity

Dkt. 18-1, at 2. The position description also listed 18 items under the heading "Best Qualified Applicants Will Also Demonstrate Many of the Following Preferred Knowledge, Skills and Abilities."

Memon and nine others applied for the position. Four of the applicants were rejected immediately because they did not meet the minimum qualifications, and a fifth person withdrew her application. The other five, including Memon, participated in telephone or Skype interviews because UWEX had determined that they met the minimum qualifications.

On November 3, 2015, three UWEX interview committee members, including Keown-Bomar, interviewed the five candidates. The interviews followed a script so that each applicant was asked the same questions.

Following the phone interviews, the committee eliminated Memon from further consideration. On November 5, 2015, he was informed via email that he was not selected for the position. Memon says that at his interview, the committee would be making its second-interview decisions much later, on November 28.

UWEX states that Memon was eliminated from consideration because his answers showed that he did not conduct research on the Cooperative Extension and 4-H Youth Development and on what type of programming the position dealt with. In particular, he did not recognize that his role would have been to manage adult volunteers to teach the programming that the county identified was important. Instead, he focused on STEM (science, technology, engineering, and mathematics) education and his "goal of making youth in Rusk County into doctors and scientists." Dkt. 30, at 17, ¶ 25. Also, Memon did not articulate whether he had volunteer-management experience or experience in forging community-based

4

partnerships. Memon disputes precisely what was discussed at his interview, which I will address in more detail below.

After holding second interviews with three finalists, including a man and a Pakistani woman, UWEX hired a woman named Corrine DeWitt, who had previously worked as a speech pathologist.[2]

ANALYSIS

A. **Summary judgment standard**

Summary judgment is appropriate if a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When, as here, the parties have filed cross-motions for summary judgment, I must consider the burden of proof each party would bear on an issue at trial, and then require the party with the burden to produce evidence showing that they have proven that issue; if the party fails to provide evidence in support of a particular issue that they must prove at trial, I may enter summary judgment against that party. *See Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997); *Mid Am. Title Co. v. Kirk*, 59 F.3d 719, 721 (7th Cir. 1995).

B. **Title VII**

Memon brings discrimination claims under Title VII, which makes it unlawful for an employer to fail or refuse to hire an individual because of the individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Memon's claims focus on UWEX's decision

---

[2] Although UWEX does not explicitly explain what happened to the fifth person who received an initial interview, I infer from its other proposed findings that she withdrew from consideration.

not to hold a second interview with him. *See Shipley v. Dugan*, 874 F. Supp. 933, 937 (S.D. Ind. 1995) ("Title VII . . . [is] offended by discrimination at any point in the selection process.").

UWEX approaches the termination claim by applying the "direct" and "indirect" methods of proof long used by courts to assess discrimination claims. The Court of Appeals for the Seventh Circuit has recently warned courts against sifting evidence into two separate categories for analysis under these two methods. Under *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016), the test "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." Therefore, I will consider the evidence as a whole and not distinguish between direct and indirect evidence or methods of proof.

In determining whether the evidence would permit a reasonable factfinder to conclude that UWEX discriminated against Memon because of his race, religion, sex, or national origin, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), remains relevant as a "means of organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases." *See, e.g., Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 500 (7th Cir. 2017). To prove that UWEX discriminated against Memon, Memon must make an initial (or "*prima facie*") case with evidence that: (1) he was a member of a protected class; (2) he applied for an open position for which he was qualified; (3) he did not receive the position; and (4) those who were hired were not in the protected class and had similar or lesser qualifications. *Whitfield v. Int'l Truck & Engine Corp.*, 755 F.3d 438, 444 (7th Cir. 2014); *see also McDonnell Douglas*, 411 U.S. at 802.[3]

---

[3] In his charge of discrimination filed with the Equal Employment Opportunity Commission,

Satisfying all four prongs of the *prima facie* case shifts the burden to the defendant "to produce a legitimate, noninvidious reason for its actions." *Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008). If the defendant rebuts the *prima facie* case, the burden shifts back to the plaintiff to show that the reasons proffered by the defendant are merely pretextual. *Id*. "[T]o show pretext, a plaintiff must show that (1) the employer's non-discriminatory reason was dishonest and (2) the employer's true reason was based on a discriminatory intent.'" *Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th Cir. 2010) (quoting *Fischer v. Avanade, Inc.*, 519 F.3d 393, 403 (7th Cir. 2008)).

Memon meets the first three elements for a *prima facie* case.[4] Because the fourth element of Memon's *prima facie* case and the question of pretext are so closely related, I will consider them together. UWEX's position is that is eliminated Memon from consideration because his interview showed that he was less suited for the job than the other candidates. As I have explained to Memon in his previous cases, Title VII plaintiffs face a high bar in showing the falsity of an employers' rationale that one applicant is more qualified than another. "[E]vidence of the applicants' competing qualifications does not constitute evidence of pretext unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at

---

Memon included a claim that he was denied the job in retaliation for previous charges he filed against UWEX. But Memon does not develop a retaliation theory in his summary judgment materials, so I will consider this claim to be abandoned.

[4] I take UWEX to be saying that, in general, its employees did not know whether Memon or the other applicants belonged to the various protected classes at issue here. But between the information included in the application packets and gathered at the interview stage, it is possible that committee members could make educated guesses about the applicants regarding these issues.

issue." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180 (7th Cir. 2002) (internal quotation marks omitted). "This makes sense because a court's role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second-guesses employers' business judgments." *Id*. at 1181 (internal quotation marks omitted).

Ultimately, Memon fails to provide evidence showing that he was so better qualified than the other applicants that there "can be no dispute among reasonable persons of impartial judgment" that he was "clearly better qualified" under *Millbrook*. UWEX contends that it eliminated Memon from consideration because his interview showed that his vision for the position did not match UWEX's goals. UWEX wanted the youth development director to manage adult volunteers to teach the programming that the county identified as important: "fostering basic life skills, developing healthy youth-adult relationships, mentoring, and equipping youth with basic skills needed to succeed in a career." Dkt. 30, at 18–19, ¶ 27.

Memon did not approach his interview from that perspective. Memon disputes UWEX's contention that he focused on STEM (science, technology, engineering, and mathematics) education during his interview, but he does not dispute that he "focused on his goal of making youth in Rusk County into doctors and scientists." *Id.* at 17, ¶ 25. UWEX considered that goal to be a mismatch for the position, countering that "4-H is not a university or a funnel for Ph.D. programs – 4-H is more about making healthy relationships, healthy communities, and guiding children." *Id.* In his summary judgment responses, Memon doubles down on this vision, stating that "during my Master's and doctorate coursework of education extension, we learn to encourage underage children and adults to earn higher education by inspiring them." *Id.* at 17–18, ¶ 25. But emphasizing higher education wasn't what UWEX was looking for.

8

Memon suggests that this issue was not important because he stressed his respect for the "chain of command" at UWEX: if his supervisors did not want him to focus on those education needs then he would not do so. But UWEX says that this misses the point. It expected the person it hired to "demonstrate[] empathy and respect for what the community wanted" at the interview, and that instead, Memon "talked about what he wanted to teach in this community, as though his ideas were more worthy than what Rusk County wanted taught." *Id.* at 22, ¶ 30. Whether or not UWEX's reasoning about this issue was ultimately wise, it is allowed to judge candidates' interviews this way without running afoul of Title VII.

UWEX also says that Memon did not explain his experience in managing volunteers or in creating community-based partnerships. Memon disputes this in part by citing his *work* as a volunteer, which is not the same as managing volunteers. He also says that he told the interviewers that his philosophy was to be patient with the volunteers because they are not being paid. But again, this is not directly a statement about management experience. Memon goes on to say that his experience was listed in his resume and lengthy cover letter, but it is not obvious from these documents that UWEX was incorrect in assessing that experience. And even assuming that UWEX was incorrect, the error alone does not raise a reasonable inference of pretext. *Kuhn v. Ball State Univ.*, 78 F.3d 330, 332 (7th Cir. 1996) ("Employers may act for many reasons, good and bad; they may err in evaluating employees' strengths; unless they act for a forbidden reason, these errors (more properly, differences in assessment) do not matter.").

Memon points to other perceived errors in assessing candidates' qualifications and in the hiring procedure itself. Memon says that the person who was hired, Corrine DeWitt, lacked two of the required qualifications: "Demonstrated skills in planning, implementing or teaching educational programs" and "Experience (paid or volunteer) in working at a community level

and partnering with others to address educational needs." But UWEX cites DeWitt's cover letter and resume showing 10 years of educational experience in the Eau Claire Area Schools, evaluating and forming treatment plans for special education students as a speech pathologist, and serving on committees evaluating various school programs. *See* Dkt. 13-6. UWEX says that those documents show that DeWitt met the "community-level experience" qualification because, as a school speech pathologist, she connected families with community resources and worked with family service facilitators and Head Start teachers. *Id.* UWEX considered these experiences to meet the minimum qualifications, and nothing in the record could lead a jury to conclude that UWEX is lying about that conclusion.

Memon also contends that DeWitt's resume and cover letter fails to show she met 7 of the 18 preferred qualifications, and that the other candidates receiving interviews also lacked some of the preferred qualifications, while he met all 18 of them. But Memon misunderstands Title VII law about qualifications. There is no rule saying that the employer must award the job to the candidate who meets the greatest number of preferred qualifications. The position description stated that "best qualified applicants will also demonstrate *many* of the preferred knowledge, skills, and abilities." Dkt. 18-1, at 2 (emphasis added). Even by Memon's reckoning, all of the candidates receiving interviews met that standard. And it is obvious from the position description that UWEX did not expect candidates to exhaustively explain each of the 18 qualifications in their application materials: the position description asked candidates to limit their cover letters to two pages, *see id.* at 3–4, which the candidates earning a second interview all did. Memon did not follow this instruction—the parties provide slightly different versions of Memon's cover letter, but that document, including his discussion of each of the 18 preferred qualifications, ran at least 13 pages. *Compare* Dkt. 13-10 (the version that Memon

10

says UWEX sent to him but that is incomplete, running 13 pages) *with* Dkt. 13-3 (Memon's purported correct version, running 16 pages).

Memon also contends that UWEX failed to "respect[] due process" by rejecting his candidacy only a day after his interview, when he was originally told that a decision on second interviews would take about a month. He relays his frustration that the interviewers "did not even digest the significance of my answers to their questions." Dkt. 30, at 12, ¶ 19. But there simply is no requirement that an employer stick to the exact procedure earlier relayed to applicants. The question is whether the facts shown could raise a reasonable inference that UWEX lied when it said that it rejected Memon's candidacy for qualification-related reasons. The timing discussed by Memon here does not raise an inference of a discriminatory rationale.

As with his other cases, Memon presents historical employment data in attempt to show that UWEX discriminated against him. He presents data about the racial characteristics of instructors at various Wisconsin technical colleges and UWEX. For instance, he says that in 2014, only 1 of the 226 instructors holding jobs as full-time instructors was Asian. At UWEX, only 6 instructors were Asian, while 334 were white.[5] *See* Dkt. 13-5. It is unclear what value the technical-college data has in relation to his claims against UWEX, but I will include it in the discussion. I take Memon to be asserting that these statistics reveal a longstanding pattern of discrimination against Asians.[6]

But Memon has the same problem as in two of his previous cases where he tried to

---

[5] Memon says that the UWEX data comes from UWEX's "2014–2015 Job Group Analysis Report," Dkt. 13-5, at 6, but he does not provide the actual report. Given Memon's pro se status, at this state of the proceedings, I will consider these statistics to be accurate.

[6] Memon does not provide analogous information to support his claims for religious or sex discrimination.

prove discrimination through similar statistics. *See Memon v. Chippewa Valley Tech. Coll.*, No. 14-cv-243-jdp, 2015 WL 5009954, at *7–8 (W.D. Wis. Aug. 20, 2015); *Memon v. Waukesha Cnty. Tech. Coll.*, No. 13-cv-704-jdp, 2015 WL 3651791, at *10 (W.D. Wis. June 11, 2015). I concluded that this evidence was insufficient to suggest discrimination, explaining as follows:

> I conclude that this statistical evidence adds very little to plaintiff's case. Usually, "[w]ithin the *McDonnell Douglas* individual disparate treatment model . . . statistical evidence is only one small part of a substantial web of evidence indicating pretext." *Bell v. E.P.A.*, 232 F.3d 546, 553 (7th Cir. 2000). In this case, plaintiff's statistical evidence holds even less weight because he does not provide the relevant "labor market" or "community" to which these hiring numbers might be compared. *Id*. ("A valid statistical analysis must encompass the relevant labor market."); *see also Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 308–09 (1977). That is, plaintiff presents the raw data regarding defendant's instructor population but does not compare it to the population of the applicants for the jobs in question, persons nominally eligible for such jobs, or even the population at large. *See Hazelwood*, 433 U.S. at 308 & n.13 (Court considered "qualified public school teacher population" to be "relevant labor market" but suggested that date regarding applicants for teaching positions would also be "very relevant."). Thus, although from a superficial perspective the data seems to show that defendant has hired Asian instructors at a very low rate, it is difficult to draw any inferences from the data without more context.

*Waukesha County Tech. College*, 2015 WL 3651791, at *10; *see also Chippewa Valley Tech. Coll.*, 2015 WL 5009954, at *7–8. The data presented here have the same problems; I simply cannot draw any inferences from the data without knowing more about the population of applicant pool, the labor market, or the community at large.

Memon's evidence regarding his national origin, religion, and sex is even weaker because he presents no statistical evidence supporting those claims. Moreover, a Pakistani candidate and a male candidate received second interviews, which suggests that Memon was eliminated for reasons other than his national origin or sex. As with Memon's previous cases, he falls far

short of presenting evidence that could lead a reasonable factfinder to find that UWEX made the hiring decision it did because of discriminatory reasons. Therefore, I will grant UWEX's motion for summary judgment on Memon's Title VII claims.

## C. Age discrimination

The ADEA prohibits employers from refusing to hire workers who are 40 or older on the basis of their age. 29 U.S.C. §§ 623(a)(1), 631(a). UWEX contends that Memon's age-discrimination claim is barred by sovereign immunity. *See* Dkt. 19, at 6 n.2 (citing *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000); *Gore v. Ind. Univ.*, 416 F.3d 590, 591–92 (7th Cir. 2005). Memon makes no response to this contention, so I will deem Memon to have forfeited his ADEA claim.

## D. Sanction

This is Memon's fourth employment-discrimination case that I have dismissed at the summary judgment stage, with Memon failing to come close to showing that he was discriminated against. In light of this history of frivolous litigation, I find that it is appropriate to sanction Memon by changing the way this court handles any employment-discrimination lawsuits he brings.

Going forward, if Memon files a civil employment-discrimination case in this court, the court will issue an order directing him to present the evidence he believes supports his claims, as if he were filing proposed findings of fact and supporting evidence in support of a motion for summary judgment. The court will screen Memon's submission to determine whether a reasonable jury could conclude that his rights were violated. If the court concludes that he has evidence sufficient to support a verdict in his favor, the case will proceed as a normal civil lawsuit. If Memon's submissions do not produce evidence that could sustain his claims, the

case will be dismissed at the outset, without the need for the defendant to file an answer or summary judgment motion.

This sanction does not apply to the other case Memon currently has pending in this court, No. 18-cv-584.

ORDER

IT IS ORDERED that:

1. Defendant University of Wisconsin Extension's motion for summary judgment, Dkt. 16, is GRANTED.

2. Plaintiff Iftikhar Ahmed Memon's motion for summary judgment, Dkt. 13, is DENIED.

3. Defendant's motion to stay the pretrial-submissions deadlines, Dkt. 34, is DENIED as moot.

4. The clerk of court is directed to enter judgment for defendant and close this case.

5. Plaintiff is sanctioned as discussed in the opinion above.

Entered August 14, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge